# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN E. JOHNSON, | No. CIV S-07-1200-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY | |
| Defendant. | |
| _____/ | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the consent of the parties, this case is before the undersigned for final decision on plaintiff's motion for summary judgment (Doc. 22) and defendant's cross-motion for summary judgment (Doc. 29).

## I. PROCEDURAL HISTORY

Plaintiff applied for disability insurance ("DI") and supplemental security income ("SSI") benefits on April 14, 2004. In his applications, plaintiff claims that his disability began on February 27, 2004. Plaintiff claims his disability consists of a combination of osteoarthritis, cervical myelopathy, right drop-foot, PTSD, and hypertension  Plaintiff's claim was initially

denied.  Following denial of his request for reconsideration, plaintiff requested an administrative hearing, which was held on June 9, 2006, before Administrative Law Judge ("ALJ") Mark C. Ramsey.  In his October 25, 2006 decision, the ALJ made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through September 30, 2005.

2. The claimant has not engaged in substantial gainful activity since February 27, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).

3. The claimant has the following severe combination of impairments: cervical myelopathy and osteoarthritis (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift 40 pounds occasionally and 20 pounds frequently, walk/stand six hour[s] but only two to three hours continuously, sit six hours, occasionally perform postural activities, avoid precise finger movements such as typing or keyboard work with the right upper extremity, perform simple gripping and grasping with the right upper extremity, and occasionally operate foot controls with the right lower extremity (these are supported by his cervical myelopathy and osteoarthritis) and has no communicative, visual, mental, environmental, or other manipulative limitations.

6. The claimant is capable of performing past relevant work as a telemarketer.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a "disability," as defined in the Social Security Act, from February 27, 2004 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

After the Appeals Council declined review on April 20, 2007, this appeal followed.

## II.  SUMMARY OF THE EVIDENCE

The facts are not at issue in this case.  Plaintiff provides the following summary of the medical evidence, which the defendant does not contradict:

///

**Social Security Neurological Consultive Examination –
Steven McIntire, M.D.**

On July 17, 2004, Mr. Johnson underwent a neurologic evaluation by Dr. McIntire. Mr. Johnson named Vioxx as his only medication. TR 119. Dr. McIntire stated:

> Objectively, the claimant has findings of mild myopathy. He has mild paramedial distribution weakness of the right arm and leg. He retains full strength of the finger flexors on the right, but the intrinsic muscles are 4- /5 in strength. He has a mild foot-drop on the right. There is not gross instability of gait. There is, however, slight unsteadiness when performing a tandem walk.

TR 121. Dr. McIntire stated:

> Given the above-findings, the claimant would have functional limitations. He would be limited to six hours of walking or standing in an eight-hour day with no more than two-three hours of continuous walking or standing. He should use a handrail when climbing stairs. He should not work on ladders, scaffolding, or in similar capacities given his gait changes. He should not work in capacities that require very fine balancing on his feet. He should not operate foot controls on the right on more than an occasional basis. He would have difficulty with activities requiring very fine, rapid, precise finger movements such as typing or keyboard work on the right. He would be able to utilize the right hand normally, however, for simple gripping and grasping functions, overall lifting or carrying would be limited to not more than 20 pounds frequently or 40 occasionally. The present examination does not suggest limitations in terms of time sitting. There are no communicative or cognitive limitations suggested by the present examination.

TR 121-122.

**Social Security Medical Reviewers- Patrick Bianchi, M.D. and
Shepard Fountaine M.D.**

By report dated August 16, 2004, Social Security Reviewer, Dr. Bianchi, assessed Mr. Johnson with the ability to occasionally lift/carry 8 pounds with his right arm/hand and 12 pounds with his left. He limited Mr. Johnson to performing activities on an occasional basis with his right upper and lower extremities. It was Dr. Bianchi's opinion that Mr. Johnson could only stand/walk for a total of two hours in an eight hour day; occasionally climb, balance, stoop, kneel, crouch or crawl; and only occasionally perform fingering activities. TR 126-128. On 5/13/05, Dr.

3

Fountaine reviewed the evidence and affirmed Dr. Bianchi's findings. TR 132.

**Medical Treatment Records**

Medical records of Primary Care dated April 13, 2004, reflected that Mr. Johnson was treated for musculoskeletal pain and arthritis. The examination revealed right shoulder tenderness, right hand mild tenderness, and an inability to grip with right hand. He was prescribed Vioxx. TR 117.

Treatment notes of May 6, 2004, reflected that Mr. Johnson was found to have a mild deformity of the right hand, was unable to make a fist, and his grip was poor. His right shoulder showed a decrease in range of motion. TR 115.

Treatment notes of July 26, 2004, reflected that Mr. Johnson was suffering nightmares and had trouble sleeping. He reported having his throat cut in prison. The examination revealed an obvious decrease of muscularity on the right side torso, arm and leg. His left wrist was defined as deformed. He was assessed with PTSD, osteoarthritis due to multiple traumas, and hypertension. He was prescribed Lexipro and Celebrex. TR 114.

Treatment records of August 16, 2004, reflected that Mr. Johnson felt better on Lexipro although he was still awakening two to three times a night with nightmares. He was prescribed Vicodin for his osteoarthritis. TR 113.

Medical records of September 21, 2004, reflected that Mr. Johnson was treated for PTSD and osteoarthritis, and had his Vioxx prescription renewed. TR 112.

Treatment notes of December 8, 2004, reflected that Mr. Johnson reported an increase in his back pain to a level of 9/10, and reported numbness in his right leg. His examination revealed a decreased range of motion in his right hand and arm, and he was assessed with PTSD and chronic pain. TR 110.

Treatment notes of January 18, 2005, reflected that he was assessed with late affect CVA, depression, pain. TR 109.

Treatment records of February 25, 2005, reflected that Mr. Johnson was treated for chronic pain from osteoarthritis. TR 106.

Treatment notes of April 21, 2005, reflected that Mr. Johnson reported in regard to his heroin habit that he had "kicked it." He was also assessed with depression and chronic pain. TR 103.

Treatment notes of May 3, 2005, reflected that Mr. Johnson underwent a psychological evaluation. He reported having insomnia and continual nightmares and flashbacks of violence. He was assessed with, among other things, PTSD, chronic. He was prescribed Lexipro, Zoloft and Seroquel.  TR 101-102.

Treatment notes of July 6, 2005, reflected that Mr. Johnson was assessed with chronic pain and prescribed an increase in his Gabapentin and Toradol. TR 152.

Treatment notes of August 2, 2005, reflected that although Mr. Johnson was still suffering from depression and PTSD, he was hearing the voices in his head less than previously. TR 151.

Treatment notes of August 19, 2005, reflected that Mr. Johnson was attending NA/AA meetings, and was assessed with right foot-drop. It was observed that he ambulated with a cane, and Accupril and Flexeril were added to his medications. TR 143.

Treatment notes of September 6, 2005, reflected that Mr. Johnson completed detoxing off heroin using methadone. He reported being glad that he was off methadone, although his left knee was not responding to treatment. He was started on Vicodin for his chronic pain. TR 141.

Treatment notes of September 13, 2005, reflected a refill of his medications. TR 139.

Treatment notes of September 13, 2005, reflected that Mr. Johnson was attending his NA/AA meetings. TR 138.

Treatment notes of September 16, 2005, reflected that Mr. Johnson had a significant increase in his left leg pain and rated it a 9 on a scale of 10. TR 137.

Treatment notes of September 22, 2005, reflected that Mr. Johnson reported an increase in his left foot pain, described his left foot as numb, and was experiencing severe pain in the middle two toes.  He was also advised to increase his hypertension medication. TR 136.

Treatment notes of December 22, 2005, reflected that Mr. Johnson was suffering with increased low back pain. TR 156.

Treatment notes of December 27, 2005, reflected that Mr. Johnson was followed-up for his back pain and hypertension. The physical examination revealed that his right wrist had limited extension and he had limited flexion of the index finger. Neurontin was added to his medication regimen. TR 155.

/ / /

    Treatment notes of March 2, 2006, reflected that Mr. Johnson reported that his lower back pain was the same and that tramadol helped. Socially, he noted that he was feeling "great" and was still clean and sober, doing volunteer work. He was described as having adequate control over his blood pressure and low back pain. TR 154.

    Treatment notes of May 2, 2006, reflected that Mr. Johnson was doing well and his pain was controlled with Neurontin, Vicodin, Tramadol, and Flexeril. On examination it was noted that he had limited right wrist extension, and limited flexion of index fingers. TR 153.

(Plaintiff's Motion at 2-5).

### III.  STANDARD OF REVIEW

    The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

Cir. 1988).

## IV.  DISCUSSION

In his motion for summary judgment, plaintiff argues that the ALJ erred in only one way in determining that he was not disabled.  Specifically, plaintiff argues that the ALJ erred in stopping the sequential evaluation at step four, finding plaintiff could perform his past relevant work.  Included in this allegation is plaintiff's contention that the ALJ was required to utilize a vocational expert to assess his employability given his non-exertional impairments.

To achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation to determine whether a claimant is physically or mentally disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  If during any point of this review, it is determined that the claimant is not disabled, the claim is not to be considered further.  See 20 C.F.R. §§ 404.1520(a) and 416.920(a).  The five-step process is summarized as follows:

1. Determination of whether the claimant is engaged in substantial gainful activity, and if so engaged, the claimant is not presumed disabled and the analysis ends;

2. If not engaged in substantial gainful activity, determination of whether the claimant has a severe impairment; if the claimant does not, the claimant is not presumed disabled and the analysis ends;

3. If the claimant has a severe impairment, determination of whether any such severe impairment meets any of the impairments listed in the regulations;[1] if the claimant does have such an impairment, the claimant is disabled and the analysis ends;[2]

///

---

[1]   See 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[2]   If a claimant is found to have an impairment which meets or equals one of the listed impairments, a conclusive presumption of disability applies and the claimant is entitled to benefits.  See Marcia v. Sullivan, 900 F.2d 172, 174  (9th Cir. 1990) (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987); Key  v. Heckler, 754 F.2d 1545, 1548 (9th Cir. 1985)).

        4. If the claimant's impairment is not listed, determination of whether the impairment prevents the claimant from performing his or her past work;[3] if the impairment does not, the claimant is not presumed disabled and the analysis ends; and

        5. If the impairment prevents the claimant from performing his or her past work, determination of whether the claimant can engage in other types of substantial gainful work that exist in the national economy;[4] if the claimant can, the claimant is not disabled and the analysis ends.

        To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is unable to do his or her previous work and cannot, considering his or her age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989).

        The claimant has the initial burden of proving the existence of a disability within the meaning of the Act. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant establishes a prima facie case of disability by showing that a physical or mental impairment prevents him from engaging in his previous occupation (steps 1 through 4 noted above). See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). However, once the claimant establishes a prima facie case of disability, the

---

[3] At this stage of the analysis, the ALJ should consider the demands of the claimant's past work as compared with his or her present capacity. See Villa v. Heckler, 797 F.2d 794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. § 416.945(a).

[4] At this stage of the analysis, the ALJ should consider the claimant's residual functional capacity and vocational factors such as age, education and past work experience. See 20 C.F.R. §§ 404.1520(f) and 416.920(f).

1   burden of going forward with the evidence shifts to the Commissioner.  See Burkhart v. Bowen,

2   856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986);

3   see Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).  The Commissioner has the

4   burden to establish the existence of alternative jobs available to the claimant, given his or her

5   age, education, and medical-vocational background (step 5 noted above). In an appropriate case,

6   the Secretary may meet this burden through application of the medical-vocational guidelines set

7   forth in the regulations.[5]  See 20 C.F.R. Pt. 404, Subpt. P, App. 2; Heckler v. Campbell, 461 U.S.

8   458 (1983); Olde v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983).  If the guidelines do not

9   accurately describe a claimant's limitations, the Commissioner may not rely on them alone to

10  show availability of jobs for the claimant.  See Desrosiers v. Secretary, 846 F.2d 573, 577 (9th

11  Cir. 1988).[6]  The Commissioner may, however, rely on the Grids even when a claimant has

12  combined exertional and non-exertional limitations, if the non-exertional limitations do not

13  impact the claimant's exertional capabilities.[7]  See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th

---

[5] For any given combination of factors (residual functional capacity, age, education, and work experience), the guidelines direct a conclusion of disability or nondisability when they accurately describe a claimant's particular limitations.

[6] However, the mere allegation of the presence of a non-exertional impairment is not sufficient to preclude application of guidelines.  Such non-exertional impairment must be found to significantly limit the range of work permitted by a claimant's exertional limitations before the Commissioner will be required to obtain expert vocational testimony regarding the availability of other work.  See, e.g., Polny v. Bowen,  864 F.2d 661, 663 (9th Cir. 1988); Burkhart, 856 F.2d at 1340; Razey v. Heckler, 785 F.2d 1426, 1430 (9th Cir. 1986) (modified 794 F.2d 1348 (1986)); Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985).  Pain has been recognized as a non-exertional limitation which can significantly limit ability to perform basic work skills.  See Perminter, 765 F.2d at 872.

[7] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a).  "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  See 20 C.F.R. §§ 404.1567(a) and 416.967(a).  "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  See 20 C.F.R. §§ 404.1567(b) and 416.967(b).  "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  See 20 C.F.R. §§ 404.1567(c) and 416.967(c).  "Heavy work" involves lifting no more than 100 pounds at a time

Cir. 1990) *overruled on other grounds* Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

### Step Four

Here plaintiff argues that the ALJ erred in finding him capable of performing his past relevant work as a telemarketer, given the limitation of his fingering abilities. It is important to note that plaintiff is not claiming the ALJ erred in defining plaintiff's RFC, nor does plaintiff contend the ALJ erred in accepting the medical opinion of the neurological consultative evaluator (CE), Dr. McIntire. The only issue raised by plaintiff is the determination by the ALJ that he is able to perform his past relevant work.

As stated above, the ALJ found plaintiff's RFC included a limitation on his ability to perform keyboard work, specifically that plaintiff should "avoid precise finger movements such as typing or keyboard work with the right upper extremity." (CAR 16). This determination, plaintiff argues, makes it impossible for him to perform the job of telemarketer, as defined by the Dictionary of Occupational Titles (DOT). He sets forth the definition of telemarketer, according to the DOT, as:

> Solicits orders for merchandise or services over telephone: Calls prospective customers to explain type of service or merchandise offered. Quotes prices and tries to persuade customer to buy, using prepared sales talk. Records names, addresses, purchases, and reactions of prospects solicited. Refers orders to other workers for filling. Keys data from order card into computer, using keyboard. May develop lists of prospects from city and telephone directories. May type report on sales activities. May contact DRIVER, SALES ROUTE (retail trade; wholesale tr.) 292.353-010 to arrange delivery of merchandise.

---

with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).
    Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

(Plaintiff's Motion at 10).

Plaintiff argues that because the ALJ found he should "avoid keyboard work," he would be unable to perform the "keys data from order card into computer, using keyboard" function of the telemarketing position.[8]

Defendant argues that plaintiff is not defining the word "avoid" properly. In this context, according to defendant, to avoid is not the same as to be precluded from performing it at all. He also argues that because plaintiff was not precluded from any typing or keyboard work, the ALJ did not err in finding plaintiff capable of performing the duties of a telemarketer. Defendant specifically argues that because the amount of typing required is limited to keying data from an order card into a computer, plaintiff would be able to do this even given his limitations. This is especially true because there is no indication that plaintiff would be unable to do such minimal typing with the use of his left hand only.

Before the court can decide whether the ALJ erred in his determination that plaintiff is capable of performing his past relevant work, we need to look at his findings. Plaintiff does not contend the ALJ erred in relying on the CE's opinion as to his limitations. In fact, none of the medical evidence is at issue here. The CE found plaintiff was limited in his ability to use his right hand/fingers in precise movements as required for typing and keyboard work. However, Dr. McIntire did not find plaintiff was incapable of doing any precise finger work. Specifically, Dr. McIntire found plaintiff

> would have difficulty with activities requiring very fine, rapid, precise finger movements such as typing or keyboard work on the right. He would be able to utilize the right hand normally, however, for simple gripping and grasping functions. Overall lifting or carrying would be limited to not more than 20 pounds frequently or 40 occasionally.

(CAR 121-22).

---

[8] Plaintiff also mentions that he would be unable to answer the phone and type at the same time. However, as defendant points out, that limitation could be overcome with the use of a headset.

Based on this opinion, the ALJ determined plaintiff was limited in his fine motor skills and that he should "avoid" typing.  The court agrees with defendant that the ALJ's finding that plaintiff should avoid precise finger movements does not mean plaintiff was unable to perform any typing or keyboard work.  The ALJ's finding limited plaintiff's ability, but not did go so far as to preclude *any* typing or keyboard work.  As plaintiff sets forth, the DOT defines the position of telemarketing as requiring some keyboard work.  This of course would require some fingering.  However, keying is just one of eight activities a telemarketer would or might be required to perform.  As the fifth such activity, it would be a minor part of the position, and would not be one of the primary duties.  Even with plaintiff's limited ability to type, the ALJ determined he was capable of performing the minimal amount of typing required for this position.  This determination is supported by substantial evidence, and the court finds no error.

<u>Vocational Expert</u>

Plaintiff also asserts that the ALJ erred in not calling a vocational expert to testify at the administrative hearing.  The basis for this allegation is that he has non-exertional impairments which require the testimony of a vocational expert to determine his employability.  Specifically he claims that he met his burden at step four, so the burden was shifted to the Commissioner at step five.  Because the ALJ found non-exertional limitations, "[a]t a minimum, the ALJ was required to proceed to step five of the sequential evaluation to determine, with the assistance of a vocational expert, what, if any, work Mr. Johnson would be capable of performing." (Plaintiff's Motion at 11).

As discussed above, the court finds no error in the ALJ's determination that plaintiff could perform his past relevant work.  Therefore, there was no error in the ALJ stopping the evaluation at step four, and he was not required to continue to step five.  It is not until the ALJ is required to proceed to step five that he is required to determine whether he needs to call a vocational expert to testify.  However, assuming the ALJ did err in not proceeding to step five, the court finds the ALJ did not err in failing to call a vocational expert to testify.

The Medical-Vocational Guidelines ("Grids") provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Campbell, 461 U.S. at 462 n.5. Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on strength factors only. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)). The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if the non-exertional limitations do not impact the claimant's exertional capabilities. See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

///

In this case, plaintiff argues he had a non-exertional limitation regarding the use of his right hand for precise finger movements. However, the ALJ could have found this non-exertional limitation did not significantly impact plaintiff's exertional capabilities. Based on the medical opinions, which are not in contention, plaintiff retains the use of his hands for simple gripping and grasping, and he retains the ability to lift 20 pounds frequently and 40 pounds occasionally. Therefore, plaintiff's typing limitation would not have a significant impact on his exertional abilities and the ALJ would not have been required to call a vocational expert to testify at the administrative hearing as to plaintiff's employability. The ALJ could have relied on the Grids. Accordingly, the court finds the ALJ did not err in failing to call a vocational expert.

### Credibility

Plaintiff spends a significant amount of time in his motion discussing his testimony. However, he does not raise any allegation of error in regards to the ALJ's credibility determination. Nonetheless, to the extent plaintiff contends the ALJ erred in finding his testimony not entirely credible, the court disagrees.

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

///

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

Smolen, 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Here, the ALJ found plaintiff's "multiple complaints . . . cannot be found fully credible as the SA determination found that he could perform a modified range of light/sedentary work and, as a result, his past work as a telemarketer." (CAR 17). The ALJ supported this conclusion by citing to inconsistencies in the record as to plaintiff's reported activities, medical examinations which were inconsistent with his testimony, and the lack of medical treatment.

These reasons constitute specific, cogent reasons for finding plaintiff not entirely credible, which are supported by the evidence. The court finds no error in the ALJ's credibility determination.

### V.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is denied;
2. Defendant's cross-motion for summary judgment is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: September 30, 2008

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE